# THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## 14 - 3012

---

### UNITED STATES OF AMERICA,
Appellee,

v.

### EARL WARNER,
Appellant

---

Appeal from a Judgment of Conviction and Sentence
Entered in the U.S. District Court for the
Western District of Pennsylvania
at 2:12-cr-00107

---

## BRIEF OF APPELLANT

---

David B. Chontos
Counsel for Appellant
PA I.D. # 53442
CHONTOS & CHONTOS, P.C.
561 Beulah Road
Turtle Creek,  PA  15145
412.825.5450
david@chontoslaw.com

# TABLE OF CONTENTS

Page

I.      TABLE OF AUTHORITIES      .      .      .      ii

II.     STATEMENT OF JURISDICTION      .      .      .      1

III.    STATEMENT OF THE ISSUES      .      .      .      2

IV.    STATEMENT OF RELATED CASES      .      .      4

V.     STATEMENT OF THE CASE      .      .      .      .      4

VI.    SUMMARY OF ARGUMENT      .      .      .      .      12

VII.   ARGUMENT      .      .      .      .      .      .      .      13

    A.      Knowledge Applies To The Interstate Items
         Used To Make Sexually Explicit Images      13

    B.      The Jury Should Have Been Instructed
         On The Necessity Defense      18

    C.      A Touch Does Not Equal Masturbation      27

    D.      An Incidental Touch Is Not "Sexual Contact"
         Under 18 U.S.C. Section 2246(3)      33


VIII.   CONCLUSION      .      .      .      .      .      .      37

IX.     CERTIFICATIONS     .     .     .     .     .          38-39

    A.     Bar Membership
    B.     Word Count
    C.     E-Brief/Hard Copy Same
    D.     Virus

X.     PROOF OF SERVICE     .     .     .     .     .     .          40


APPENDIX VOL. I          .     .     .     .     .     APX 1 - 13

APPENDIX VOL. II          .     .     .     .     APX 14 - 164

APPENDIX VOL. III     .     .     .     .     APX 165 - 344

APPENDIX VOL. IV     .     .     .     .     APX 345 - 525

APPENDIX VOL. V          .     .     .     .     APX 526 - 609

APPENDIX VOL. VI     .     .     .     .     .     APX 610 - 618

APPENDIX VOL. VII     .     .     .     .     APX 619 - 625

APPENDIX VOL. VIII     .     .     .     .     APX 626 - 635

APPENDIX VOL. IX     .     .     .     .     APX 636 - 657

APPENDIX VOL. X          .     .     .     .     APX 658 - 715

## TABLE OF AUTHORITIES

Bowsher v. Merck & Co., 460 U.S. 824 (1983)          .     .     .     30

Morissette v. United States, 342 U.S. 246 (1952) . . . 16

Muscarello v. United States, 524 U.S. 125 (1998) . . . 18

United States v. Aldrich, 566 F.3d 976 (11th Cir. 2009) . . 36

United States v. Aquino, 555 F.3d 124 (3d Cir. 2009) . . 33

United States v. Brodie, 403 F.3d 123 (3d Cir. 2005) . . 14

United States v. Coates, 11-2599 (3d Cir. Feb. 23, 2013) . 35

United States v. Critterdon, 883 F.2d 326 (4th Cir. 1989) . 22

United States v. Dent, 149 F.3d 180 (3d Cir. 1998) . . 14

United States v. Dost, 636 F.Supp. 828 (S.D. Cal 1986),
     aff'd sub nom. United States v. Wiegand,
     812 F.2d 1239 (9th Cir. 1987) . . . . . 29

United States v. Gore, 592 F.3d 489 (4th Cir. 2010) . . 21

United States v. Grier, 475 F.3d 556 (3d Cir.2007)(en banc) . 33

United States v. Gross, 961 F.2d 1097 (3d Cir. 1992),
     cert. denied, 506 U.S. 965 (1992) . . . . 19

United States v. Knox, 32 F.3d 733 (3d Cir. 1992) . . . 30

United States v. Leahy, 445 F.3d 634 (3d Cir. 2006) . . 27

United States v. Pawlowksi, 682 F.3d 205 (3d Cir. 2012) . 35

United States v. Santos, 553 U.S. 507 (2008) . . 30, 31

United States v. Shafer, 573 F.3d 267 (6th Cir. 2009) . . 36

United States v. Shea, 493 Fed. Appx. 792 (7th Cir. 2012) . 36

United States v. Sheldon, 755 F.3d 1047 (9th Cir. 2014)    .    16

United States v. Smith, 459 F.3d 1276 (11th Cir. 2006)  .    .    16

United States v. Stewart, 185 F.3d 112 (3d Cir. 1999)    .    .    19

United States v. Terrell, 700 F.3d 755 (5th Cir. 2012)    .    .    16

United States v. Villard, 885 F.2d 117 (3rd Cir. 1989)    .    .    29

United States v. West,643 F.3d 102 (3d Cir. 2011)    .    .    33

United States v. X-Citement Video, Inc., 513 U.S. 64 (1994)    .    17

Virgin Islands v. Isaac, 50 F.3d 1175 (3d Cir. 1995)    .    .    19

## STATUTES & OTHER CITATIONS

18 U.S.C. Section 2246(3)    .    .    .    .    .    .    34, 36

18 U.S.C. Section 2251(a)    .    .    .    .    .    14, 15, 16, 17

18 U.S.C. Section 2256(2)(A)    .    .    .    .    .    27, 28

18 U.S.C. Section 2256(2)(A)(iii)   .    .    .    .    .    32

18 U.S.C. Section 3231    .    .    .    .    .    .    .    1

18 U.S.C. Section 3742(a)(1)-(a)(2)    .    .    .    .    .    2

28 U.S.C. Section 1291    .    .    .    .    .    .    1, 2

U.S.S.G. Section 2G2.1(b)(2)(A)    .    .    .    .    34,35, 36

# RULES & OTHER CITATIONS

3d Cir L.A.R. 30.3(b) . . . . . . . 3

2 W. LaFave, <u>Substantive Criminal Law</u>
§10.1, (2003) . . . . 20, 22, 23, 24, 25, 26

3rd Circuit, Model Criminal Jury Instructions, Section 8.04 . 21

5th Circuit Pattern Jury Instructions, Section 1.36 . . 22

8th Circuit Criminal Instructions, Section 9.02 . . 22

9th Circuit Standard Jury Instructions, Section 6.6, (2013) . 22

10th Circuit Pattern Criminal Jury Instructions, Section 1.36 22

11th Circuit Jury Instructions, Section 16 . . . . 22

Random House Kememan Webster's College Dictionary (2010) 31

The American Heritage Dictionary of the English
Language, 4th Ed (2000) . . . . . . 31

Webster's Third New International Dictionary of the
English Language Unabridged 1391 (1986) . . . 32

9  Oxford English Dictionary 454 (2d ed.1989) . . . 31

www.dictionary.reference.com/browse . . . 32

www.merriam-webster.com/dictionary . . . 31

## II.    STATEMENT OF JURISDICTION: SUBJECT MATTER and APPELLATE

On April 17, 2012, an indictment was filed in the Western District of Pennsylvania charging Earl Warner ("Warner") with four (4) counts of producing child pornography, 18 U.S.C. 2251(a) and (e). Appendix, 15 (Hereinafter, "APX" followed by page number). A superseding indictment was docketed on December 19, 2012 and it accused Warner of six (6) counts of producing child pornography, 18 U.S.C. 2251(a) and (e), and one (1) count of possessing child pornography, 18 U.S.C. 2252(a)(4)(B). APX 17; 29-35. Because the charges constitute an offense against the United States, the district court had original jurisdiction pursuant to 18 U.S.C. Section 3231 ("The district courts of the United States shall have original jurisdiction, ..., of all offenses against the laws of the United States.").

This is an appeal from the final judgment and sentence imposed on May 30, 2014. APX 1, 27. Warner filed his *Notice of Appeal* on June 14, 2014. APX 1, 27. The United States Court of Appeals for the Third Circuit has jurisdiction pursuant to 28 U.S.C. Section 1291

1

("The courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts of the United States").

One of Warner's complaints concerns an incorrect application of the Sentencing Guidelines. APX 660-661; 668. This Court has jurisdiction to review such claims under 18 U.S.C. Section 3742(a)(1)-(a)(2)("A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence-- * * *; (2) was imposed as a result of an incorrect application of the sentencing guidelines; …").

## III.    STATEMENT OF ISSUES FOR REVIEW

Did the district court err in ruling that the government was not required to show Warner had knowledge that the items he used traveled in interstate commerce?

Issue Preservation    At the close of the government's case, Warner moved for acquittal. APX 334-335. His basis was the lack of evidence showing Warner had the requisite knowledge that the materials he used traveled in interstate commerce. APX 334. After hearing from the government, the district court denied the motion. APX 335.

2

Did the district court err when it did not instruct the jury on the defense of necessity?

> Issue Preservation    Warner filed his request in writing. APX 25, 576-579. The district court heard argument on its propriety before denying the request. APX 487-490. Before the jury left to begin deliberations, Warner renewed his objection. APX 567.

Did the district court err in instructing the jury that the phrase "sexually explicit conduct" includes "masturbation" when the evidence shows no masturbation took place.

> Issue Preservation    At the jury charge conference, the parties debated the definition of "sexually explicit conduct". APX 523.  The district court sided witht eh government. APX 523.  Before the jury left to begin deliberations, Warner renewed his objection. APX 567.

Did the district court err when it found that two photographs depicted "sexual contact" to then justify a 2 level increase in the Sentencing Guidelines?

> Issue Preservation    Warner objected to the 2-level increase before sentencing and at sentencing. APX 660-661; 712.  The government took a contrary view. APX 663.  The district  court overruled Warner's objection and ruled the 2-level increase was appropriate. APX 668.

3d Cir. L.A.R. 28.1(a)(1).

IV.        **STATEMENT OF RELATED CASES**

Warner is not aware of any related cases before this, or any

other, Court.  His *Pre-Sentence Report* ("PSR") identified three related

cases. Armando Cruz was sentenced by the same district court judge

and no appeal was filed. PSR, pg. 2.  Brandon Schroth was sentenced in

April, 2014 in the Southern District of California.  No appeal was filed.

*See*, Docket 12-cr-977; PSR, pg. 2.  Jeffrey Mueller was sentenced in

October, 2012 in a Colorado courtroom.  No appeal was filed.  *See*,

Docket 11-cr-339; PSR, pg. 2.


V.         **STATEMENT OF THE CASE**

A jury found Earl Warner guilty of producing child

pornography and possessing child pornography.  Warner defended the

charges on the old, but seldom used, defense of necessity.

On April 17, 2012, a grand jury indicted Warner. APX 15.  He was

charged with four (4) counts of producing child pornography, 18 U.S.C.

2251(a) and (e).  APX 15, #3.  A superseding indictment was docketed

on December 19, 2012 and it accused Warner of six (6) counts of
producing child pornography, 18 U.S.C. 2251(a) and (e), and one (1)
count of possessing child pornography, 18 U.S.C. 2252(a)(4)(B). APX 17,
#30; APX 29-35.

The charges stemmed from an investigation that did not start in
the Western District of Pennsylvania. In December, 2011, FBI agents
in California, through Denver, came across photographs of young girls
which they believed were taken in Mercer County, Pennsylvania. APX
114, 124. Local FBI agents, with an assist from Pennsylvania state
police and public school officials in Mercer County, identified the girls
in the photographs. APX 81. The girls were interviewed and law
enforcement efforts turned their attention towards Armando Cruz
("Cruz"). APX 82. Cruz was soon arrested on state charges. While
federal charges against Cruz were being contemplated, law enforcement
had interaction with Warner at his apartment. APX 84. This February
15, 2012 meeting was a relatively short discussion but nevertheless
valuable.

Within a short time frame, Cruz was federally indicted. Cruz
cooperated with federal authorities. APX 88. On March 26, 2012, Cruz

told them about Earl Warner. He told them how he had recently been in Warner's home and downloaded material from Warner's laptop. APA 89. Cruz then "burned" that material to a pair of discs and then hid those discs at his workplace. The FBI recovered those discs from the exact spot Cruz had described. APX 89-90. They looked at those discs. They recognized the girls. More importantly, they recognized background items as coming from Warner's apartment. APX 91.

Law enforcement's efforts now shifted gears. Their focus was squarely on Warner. He was interviewed by an FBI agent, Thomas Carter, and a Pennsylvania state trooper. The discussion happened at the Mercer barracks of the Pennsylvania state police on April 3, 2012. APX 92; APX 313-314. The trio talked for about an hour. Warner initially denied taking any photos of any girls. APX 316. A videotape was played which had Warner's voice on it. After hearing it, he admitted that it was his voice and admitted to being the camera operator. APX 317. He later admitted to taking pictures of Faith with her clothes on. APX 322. When pressed about photographs later in the sequence which showed Faith naked, Warner claimed no knowledge of who the picture taker was. APX 322. Sometime later, that changed.

He acknowledged taking 3 photos of Faith while she was naked. APX 324. He also admitted to his hand being in Exhibit 2.15 and touching her. APX 330.

In July, 2013, a suppression hearing was held as Warner tried to exclude his statements given to Agent Carter back in April, 2012. APX 18, #50-51. The district court denied the request through an opinion on October 24, 2012. APX 19, #61.

In January, 2014, the trial took place. The government presented testimonial evidence from 7 witnesses; FBI Agent Thomas Carter, APX 79-127, APX 313-330; digital forensic expert Robert Pearson, APX 127-191; Fawn Mills, mother of teenage witness Faith, APX 191-207; Laura Holmes, mother of Harley, APX 207-215; teenage witness Margie, APX 215-246; teenage witness Faith, APX 247-277; and Armando Cruz, APX 278-312. There were plenty of documents admitted including the images germane to each count, the camera, and memory cards. APX 580-604; APX 605-657.

.Teenage witness Marge told the jury of her interaction with Warner including her revealing to him that Cruz had taken photos of

her and the other girls. APX 240.  She also talked about Cruz being a

bad man, that she should stay away from him and that Warner was

going to get even with Mr. Cruz on her behalf. APX 237-238.  Teenage

witness Faith was more revealing.  She told Warner's daughter "that we

needed to stop what [Cruz] was doing" so "tell your dad" and "we need

to figure out a way to stop it." APX 265.  Her and Warner then talked.

The idea was to have pictures taken including herself and then

somehow put on Cruz's computer. APX 269-270.  On re-direct, Faith

explained:

> "[Warner] was going to take pictures of me and other girls, he was
> going to put it on a computer card, and he was going to switch
> them out and like tell Armando that he has pictures of girls on
> here, and he was going to give one that doesn't have anything on
> it.  He was going to give that one to him and then get his and take
> his computer card and give it to the police and show them what
> he's been doing."

APX 275.  More details followed on re-cross.  Put the photos on a

storage device and take that storage device to Cruz's house and transfer

those images to Cruz's laptop. APX 276.  Then do a switch, give Cruz a

blank, receive from Cruz the photos of the girls and then take that

proof to the police. APX 276-277.

At the close of the government's case, Warner made four arguments pursuant to Rule 29 of our Rules of Criminal Procedure. One was that the government did not show "Warner's knowledge that he should have known the camera memory cards traveled in interstate commerce." APX 334-335. After hearing from the government, the district court overruled Warner's motion. APX 335.

The defense then took the initiative. Warner testified, APX 345-473, as did two character witnesses, APX 474-480, and a fact witness, Teresa Gilbert. APX 481-484. Ms. Gilbert recalled in the Summer of 2011, her cousin, Warner, being very upset and distraught about news he had just received from one of his daughter's friends about a grown man (Cruz) in the neighborhood. APX 482. This corroborated what Warner said. APX 355 ("I talked to a few different people...one of them was my cousin".). Warner also testified that he contacted a child protective services agency and was told that "nothing can be done without proof". APX 355. The juxtaposition of these revelations from the girls and the perceived need for evidence, Warner embarked on his plan to eliminate Armando Cruz. He told the jury the plan was "to

trade pictures for pictures", APX 449, but with the twist of a blank disc. He talked about the need for proof and how, until then, nothing could be done. APX 468.

Before closing arguments, a charge conference was held. Warner asked for an instruction based on necessity. APX 487-490. The district court denied the request and later authored an opinion where it concluded a prima facie case for a necessity charge was not present. APX 10-13. On another jury charge matter, Warner asked that the definition of "sexually explicit conduct" not include "masturbation" as there was no evidence to support its inclusion. APX 523. The district court disagreed. APX 558. Its final charge included "masturbation" as a means with which to satisfy the phrase – "sexually explicit conduct". APX 558-559.

The jury returned a verdict of guilty on all 7 counts. APX 571-572. The parties proceeded to sentencing. After review of the PSR, Warner objected to paragraph 26 which reflected a 2 level increase for "sexual contact". APX 660-661. Warner's position was the two photographs involved did not satisfy the statutory definition of "sexual contact" under 18 U.S.C. 2246(3). Id. The government claimed it did. APX 663.

The *Addendum* to the PSR was non-committal. The district court found "these two images depict the child touching her groin area" which, in its view, satisfied the definition in 18 U.S.C. Section 2246(3). APX 668.

On May 30, 2014, the district court imposed its sentence. Based upon an offense gravity score of 43 (the raw score was 50) and a criminal history category of II, the recommended sentence was life in prison. The guidelines were informed, somewhat, by the presence of a mandatory minimum. That was 15 years at each of the 6 production counts. *See*, 18 U.S.C. Section 2251(e)("Any individual who violates...this section shall be ... imprisoned not less than 15 years..."). The maximum was 30 years for those same offenses. Warner got the maximum. His punishment was a concurrent 360 months at counts 1 through 6 followed by a consecutive 120 months for the possession conviction. All total, 40 years of jail for this 56 year old man.

## VI.        <u>SUMMARY OF ARGUMENT</u>

Warner makes 4 arguments.  One focuses on the jurisdictional nexus required for all federal prosecutions.  The next two involve jury instructions and the final argument questions the computation of the sentencing guidelines for a particular count.

All criminal offenses require the accused to have a certain mental state before conviction can be had.  The requisite knowledge applies to Warner knowing or having reason to know that the items he used to create the images had traveled in interstate commerce.

The jury instruction errors were one of omission and one of commission.  Warner made a prima facie case of necessity and his jury deserved to be so instructed.  The act of commission which led to jury instruction error was the use of an expansive definition of "sexually explicit conduct'.  The district court told the jury that "masturbation" could suffice.  The evidence showed a touch and nothing else.  As "masturbation" has come to be defined, a touch is not enough.

The district court's increase in the guideline range by 2-levels for "sexual contact" under 2G2.1(b)(2)(A) of the Sentencing Guidelines is not sustainable.  Pulling aside one's underwear which then exposes one's pubic area is not "sexual contact".

## VII.   ARGUMENT

Warner's arguments begin with a jurisdiction based attack on the government's evidence followed by a pair of jury instructions errors and finishes with a sentencing guideline computation issue.

### Knowledge Applies To The Interstate Items Used To Make Sexually Explicit Images

The district court erred went it denied Warner's motion for acquittal because the government failed to introduce evidence which showed he knew or should have known that the images were produced with items that traveled in interstate commerce.  Since this error infiltrated all 6 production counts, they must be reversed.

<u>Standard of Review</u>

"On appeal from the grant or denial of a motion for judgment of acquittal, [we] exercise[ ] plenary review and independently appl[y] the same standard as the district court." <u>United States v. Brodie</u>, 403 F.3d 123, 133 (3d Cir. 2005).  That standard is to "view the evidence in the light most favorable to the government, and [to] sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Dent</u>, 149 F.3d 180, 187 (3d Cir. 1998).

The operative statutory provision is Title 18, Section 2251(a) of the United States Code.  It states:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce . . . or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 Section 2251(a).  A prosecution under this Section requires the government to prove two elements.  First, a person employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually

explicit conduct for the purpose of producing a visual depiction of such conduct. Second, the government must prove a jurisdictional nexus. Regarding the jurisdictional component, the statute begins with the phrase – *if such person knows or has reason to know.* 18 U.S.C. 2251(a). It then goes on to identify the 3 ways in which federal jurisdiction is triggered. The government's theory in this case was based upon the second possibility. APX 335.[1] That part of the statute says: "if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer…" 18 Section 2251(a). It is Warner's position that when interpreting this second provision a court must include the knowledge provision referenced above. Therefore, the proper read of this jurisdiction hook would be as follows :

> "if such person knows or has reason to know … that visual depiction was produced or transmitted using materials that have

---

[1] "The law is clear on this, your Honor, … Defendant need not know or have reason to know that the particular materials he used to produce the images traveled in interstate commerce. The Government only has to prove as one possibility of establishing such nexus with commerce that they were in fact manufactured outside the State of Pennsylvania." APX 335.

been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer..."

18 Section 2251(a).

The issue Warner presents is a matter of first impression in this Circuit.[2] That is not the case in the 11th, 5th and 9th. All three - United States v. Smith, 459 F.3d 1276 (11th Cir. 2006), United States v. Terrell, 700 F.3d 755 (5th Cir. 2012) and United States v. Sheldon, 755 F.3d 1047 (9th Cir. 2014) - are at odds with Warner's position that the government was required to prove that he knew the materials (camera, laptop, memory cards) used to make the images had traveled in interstate commerce. This triumvirate of case law has not, however, considered a few distinguishing characteristics.

For an act to be deemed a criminal act, the law generally requires mens rea. Morissette v. United States, 342 U.S. 246,250 (1952)(" The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as

---

[2] In the CASEMAKER database provided through the Pennsylvania Bar Association, a search of "18 /7 2251(a)" reveals 34 Third Circuit case references to this particular section. That collection does not mention the present issue.

universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."). Considering the harsh penalty Warner was facing – six 15 year mandatory minimums – it cannot be said that scienter has been dispensed with. United States v. X-Citement Video, Inc., 513 U.S. 64,72 (1994)("[T]he harsh penalties attaching to violations of the statute as a 'significant consideration in determining whether the statute should be construed as dispensing with mens rea'".).

Through this filter, Warner's interpretation gains a level of persuasion based upon the plain ordinary meaning and, alternatively, the rule of lenity. Section 2251(a) is made up of 4 clauses. The first three are separated by a comma; the last is separated by the word "or". The mental state or knowledge component of this statute is set forth in the second clause and is meant to apply to the third and fourth clauses. If it were not intended to apply to the 3rd and 4th clause, you would then have the criminalization of conduct without a corresponding mental state. Congress surely didn't mean to do that.

Alternatively, the rule of lenity would have application.

Does the phrase - *if such person knows or has reason to know* - apply only to the second phrase or does it extend to the 3rd and 4th phrases in Section 2251(a)?  Any "ambiguity or uncertainty" favors the citizen. Muscarello v. United States, 524 U.S. 125, 139 (1998).

Conduct may become a federal crime if the government can satisfy the jurisdictional nexus Congress demands.  This prosecution required Warner to have the requisite level of knowledge.  Section 2251(a) requires it but the government's evidence did not clear the hurdle.  This failure warrants reversal of his production convictions.

## The Jury Should Have Been Instructed On The Necessity Defense

Warner defended this prosecution based on necessity.  In other words, Warner saw the greater evil as Cruz and his collection of child porn and devised a plan to get that vast collection of material by producing a more limited collection of child porn and then tricking Cruz into what was believed to be an even exchange followed by law enforcement contact.  While well-intended, Warner's plan was poorly executed.  Despite these failings, Warner's jury should have been

told about the particulars of his defense. It was not. The district court

refused Warner's request to charge on necessity. According to it,

Warner failed to produce evidence on all of the elements of necessity.

APX 10-13. As will be shown, that conclusion is not correct. The

district court's error in not charging on the defense of necessity

mandates a new trial be granted.

<u>Standard of Review</u>

We review a district court's refusal to give a requested jury
instruction under an abuse of discretion standard. <u>United
States v. Gross</u>, 961 F.2d 1097,1101 (3d Cir. 1992), *cert.
denied*, 506 U.S. 965 (1992). However, a district court's
refusal to give a jury instruction on a defendant's theory of
his defense is reviewed de novo where the defendant objects
to the district court's refusal to give the requested
instruction. <u>United States v. Stewart</u>, 185 F.3d 112,124 (3d
Cir. 1999).

As a general proposition, "a defendant is entitled to an
instruction as to any recognized defense for which there
exists evidence sufficient for a reasonable jury to find in his
favor." <u>Virgin Islands v. Isaac</u>, 50 F.3d 1175,1180 (3d Cir.
1995) (*quoting* <u>Matthews v. United States</u>, 485 U.S.58, 63
(1988)). If the evidence presented at trial indicates a basis
for the defense, a court may not refuse a defendant's request
for an instruction on that defense. <u>Id</u>.

"One who, under the pressure of circumstances, commits what would otherwise be a crime may be justified by 'necessity' in doing as he did and so not be guilty of the crime in question."   2 W. LaFave, Substantive Criminal Law §10.1, p. 523 (2003)(hereinafter, "LaFave"). "The rationale of the necessity defense is not that a person, when faced with the pressure of circumstances...lacks the mental element which the crime requires.  Rather, it is this reason of public policy; the law ought to promote the achievement of higher values at the expense of lesser values, and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law." Id., at 524.  The necessity defense "is often expressed in terms of choice of evils: When the pressure of circumstances presents one with a choice of evils, the law prefers that he avoid the greater evil by bringing about the lesser evil.  Thus the evil involved in violating the terms of the criminal law...may be less than that which would result from literal compliance with the law." Id.

At some point in our past, the defense of necessity has been grouped with the defenses of duress and coercion "under a single,

unitary rubric: justification." <u>United States v. Gore</u>, 592 F.3d 489,491

n.1 (4th Cir. 2010).  This mashing together has lead to the adoption of

jury instructions on the unitary topic.  This Circuit has identified four

elements.  They are :

> First, that *(name)* was under an immediate, unlawful threat of
> death or serious bodily injury to *(himself)* *(herself)* or to others;
>
> Second, that *(name)* had a well-grounded *[reasonable]* fear *[belief]*
> that the threat would be carried out if *(he)* *(she)* did not commit
> the offense*(s)* *[criminal acts]*;
>
> Third, that *(name's)* criminal action was directly caused by the
> need to avoid the threatened harm and that *(name)* had no
> reasonable, lawful opportunity to avoid the threatened harm
> without committing the offense*(s)* *[criminal acts]*; that is, that
> *(name)* had no reasonable lawful opportunity both to refuse to do
> the criminal act and also to avoid the threatened harm; and
>
> Fourth, that *(name)* had not recklessly placed *(himself)* *(herself)*
> in a situation in which *(he)* *(she)* would be forced *[it was probable
> that (he) (she) would be put in a position of having to choose
> whether]* to engage in criminal conduct.

3rd Circuit, Model Criminal Jury Instructions, Section 8.04.  Other

Circuits have followed suit.  Pattern jury instructions from the 4th, 5th,

8th, 10th and 11th Circuits pretty much mimic this Circuit's version.[3]  A read of this collection reveals a theme.  They have forgotten the ancestry of the defense.  The 9th circuit, much like the dutiful grandson, honors the concept.  It defines the defense as follows:

A defendant acts out of necessity only if:

1. the defendant was faced with a choice of evils and chose the lesser evil
2. the defendant acted to prevent imminent harm
3. the defendant reasonably anticipated his conduct would prevent such harm; [and,]
4. there were no other legal alternatives to violating the law.

9th Circuit Standard Jury Instructions, Section 6.6, pg. 98-99 (2013).

Warner recognizes this shift to a unitary concept.  However, our law must be amendable to unique circumstances that do not fit neatly within a standard jury charge.  This matter exemplifies that difficulty. The district court clung to the definition spelled out in Section 8.04. APX 11.  It identified each element and engaged in some very limited application of facts to those elements.  APX 12-13.  Warner

---

[3] United States v. Critterdon, 883 F.2d 326 (4th Cir. 1989); 5th Circuit Pattern Jury Instructions, Section 1.36, pgs. 64-65; 8th Circuit Criminal Instructions, Section 9.02, pgs, 721-722; 10th Circuit Pattern Criminal Jury Instructions, Section 1.36, pgs. 58-59; and, 11th Circuit Jury Instructions, Section 16, pgs. 81-82.

concedes that under the test chosen by the district court, he would not satisfy the first element – danger of death of serious bodily injury.

But, were the right four elements chosen to review?  Warner says "No! and advocates for a course correction.  This Circuit needs to recognize the necessity defense is not subject to the standard charge at 8.04. for it strays too far from its roots.  LaFave recognizes 6 elements to the necessity defense.  They are: (1) the harm avoided; (2) the harm done; (3) intention to avoid harm; (4) relative value of harm avoided to harm done; (5) optional course of action: and, (6) no fault in bringing about the situation. LaFave, *supra*, Section 10.1(d)(1)-(6), pgs. 529-534. Review of the record demonstrates Warner has made a prima facie showing on each of these elements.

LaFave's initial focus is on the harm avoided. Id., Section 10.1(d)(1), pg. 529.  The harm avoided need not be physical harm such as death or bodily injury.  It can be harm to property.  It can be harm to one's self.  It can be harm to others.  Unequivocally, the harm avoided here is the distribution of images of these young girls including his own daughter.

The second area to examine is the harm done. "[T]he harm done is not limited to any particular type of harm." Id., Section 10.1(d)(2), pg. 529. Without question, the harm done by Warner is similar to what Cruz had done. In some respects, it was probably the same. However, Warner's limited cast of 3 girls pales in comparison to Cruz's laundry list of victimized young girls. APX 239 (saw more than 10 girls in Cruz's collection).

"To have the defense of necessity, the defendant must have acted with the intention of avoiding the greater harm." LaFave, *supra*, Section 10.1(d)(3), pgs. 529-530. "In other words, he must believe that his act is necessary to avoid the greater harm. An honest (and doubtless, reasonable) belief in the necessity of his action is all that is required." Id. Warner's words and deeds showed he had the requisite intent. Soon after hearing about what Cruz had done to these girls, he was beside himself. According to his cousin, Warner was "very, very upset and distraught" APX 482. Warner produced the images in a limited time frame – May and June of 2011 – according to the government's own expert. APX 177. The temporal limitation shows an

intent to eviscerate the greater harm more than it shows him being a lecherous old man.

The 4th area LaFave directs our attention to is a balancing of the two alternatives.  LaFave, *supra*, Section 10.1(d)(4), pgs. 530-531. This weighing process tilts in Warner's favor.  Warner never shared his images with anyone.  Cruz, on the other hand, shared them with 3 maybe 4 other people. APX 280.[4]  Warner took images of 3 girls.  Cruz's collection was greater - 50% greater. APX 308.

Another area LaFave suggests a Court examine is the other options available.  "The defense of necessity applies when a defendant is faced with this choice of two evils: he may either do something which violates the literal terms of the criminal law and thus produce some harm, or not do it and so produce a greater harm."  LaFave, *supra*, Section 10.1(d)(5), pgs. 532-533. "If, however, there is open to him a third alternative, which will cause less harm than will be caused by violating the law, he is not justified in violating the law." Id.  Warner considered the options but chose not to call the police or contact an

---

[4] Is it a fair inference to make that those people then shared the Cruz produced images with others.  Reason suggests so.

agency designed to protect children. His reasoning was the need for proof. APX 425. Without proof, neither entity would be able to help. So, he engaged in his plan to acquire that proof. Faith said as much: "[Warner] was going to take the one that Armando gives him and take it to the police and turn him in". APX 277; *see also*, APX 448 (Warner: "we were going to use them to take to the police.").

LaFave's sixth and final point of emphasis is examining the defendant's role in bringing about the situation. LaFave, *supra*, Section 10.1(d)(6), pg. 534. Warner played no role in the child-porn gathering activities of Armando Cruz. Warner only began to act *after* the girls told him what Cruz had done to them.

Upon returning to the origins of the necessity defense and construing the facts in his favor, Warner made a prima facie showing of the necessity defense. As such, his jury should have been given an instruction consistent with what he proposed, APX 576-578[5], for that is a better representation of the necessity defense than what this Circuit currently suggests is appropriate.

---

[5] Warner's proposal touches upon the same principles espoused by LaFave.

## A Touch Does Not Equal Masturbation

The district court erred when it defined the phrase "sexually explicit conduct" during its final charge to the jury.  Warner argued the definition should be limited to "lascivious exhibition of the genitals or pubic area of any person" and it should *not* include "masturbation". APX 523.  The district court disagreed.  It charged the jury using both predicates as a means to satisfy the definition of "sexually explicit conduct". APX 558-559.  This expansive and unwarranted jury instruction justifies the grant of a new trial.

### Standard of Review

Whether the jury was instructed on the proper legal standard is subject to plenary review. United States v. Leahy, 445 F.3d 634,642 (3d Cir. 2006).

Each crime Warner was charged with contains the phrase – "sexually explicit conduct". APX 555.  It is an element of both charges.  As such, the jury must be told what "sexually explicit conduct" is.  Section 2256(a)(A) of Title 18 of the United States Code defines the

phrase as follows:

> "(2)(A)   *   *   *   'sexually explicit conduct' means actual or simulated-
>
> (i)     sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> (ii)    bestiality;
> (iii)   masturbation;
> (iv)    sadistic or masochistic abuse; or
> (v)     lascivious exhibition of the genitals or pubic area of any person;"

18 U.S.C. Section 2256(2)(A). Warner had no difficulty with instructing the jury on just subsection (v) – lascivious exhibition. APX 523. He argued the evidence did not support the inclusion of "masturbation" as an alternative way in which to satisfy the definition. APX 523. The government felt it should be included as "the term 'masturbation' includes the images where he is touching the girls." APX 523. The district court agreed with the government and told the jury: "sexually explicit conduct includes the actual or simulated masturbation or lascivious exhibition of the genitals or pubic area of any person." APX 558.

Congress did not provide any linguistic assistance for the 5

ways to satisfy the definition of "sexually explicit conduct". <u>United States v. Villard</u>, 885 F.2d 117 (3rd Cir. 1989). The lack of guidance led this Circuit to adopt the <u>Dost</u>[6] factors as a means to determine if a visual depiction of a minor constitutes "lascivious exhibition of the genitals or pubic area." <u>Id</u>., at 121. The need to develop a non-exclusive, multi-factor test was an appropriate way with which to help define the phrase "lascivious exhibition".

But, what about the other "more concrete types of sexually explicit conduct listed in section 2256(2)". <u>Id</u>. at 121. Do those other 4 deserve further explanation or does a jury just rely upon its own understanding of the term?[7] Fortunately, we need not tackle that issue here. Warner's present complaint is more fundamental. The evidence did not provide a sufficient basis for the district court to even include the term "masturbation" in the definition of "sexually explicit conduct".

The government pointed to "the images where he is touching

---

[6] <u>United States v. Dost</u>, 636 F.Supp. 828 (S.D. Cal 1986), *aff'd sub nom.* <u>United States v. Wiegand</u>, 812 F.2d 1239 (9th Cir. 1987).

[7] The district court went to great lengths to expand upon the phrase "lascivious exhibition". APX 558-559. The word "masturbation" was left to stand by itself.

the girls" as its support to include "masturbation". APX 523.  The plural

reference to "girls" is not accurate.  The government presented live

testimony from two girls – Margie and Faith.  Margie told the jury

Warner touched her ankles, feet, hands and her hair. APX 226-227.

Faith told the jury that it was Warner's hand in photograph 2.14A

touching her. APX 258.  So, we had one girl, not two being touched.[8]

Now, does that touching equal masturbation?  No, it does

not.  Masturbation is not defined by statute.  In those situations, a word

is to be given its ordinary meaning.  United States v. Knox, 32 F.3d

733,744 (3d Cir. 1992)("[I]t is axiomatic that when the statutory

language is clear, the words must be interpreted in accordance with

their ordinary meaning. [citation omitted]".).  Definitions should be

adopted that "give effect, if possible, to every word of the statute,"

Bowsher v. Merck & Co., 460 U.S. 824, 833 (1983), and dictionary

definitions are cognizable.  United States v. Santos, 553 U.S. 507

---

[8] This is consistent with the government's opening argument.  There it
referenced Warner touching Faith with his hand coupled with specific
reference to Exhibit 2.15.  APX 59, 64.  The closing argument mimicked
its detail less position at the charge conference.  At closing, it mentioned
Warner touching the girls but did not specify names or exhibits.  APX
499.

(2008)(Court uses dictionary definitions).  The Oxford English

Dictionary defines "masturbation" as "deliberate erotic self-stimulation"

and provides an accompanying definition of mutual masturbation as the

"stimulation of the genitals of one person by another in order to produce

an orgasm without sexual intercourse." 9  Oxford English Dictionary

454 (2d ed.1989).  Others described the word as: "erotic stimulation

especially of one's own genital organs commonly resulting in orgasm

and achieved by manual or other bodily contact exclusive of sexual

intercourse,...";[9]  "[e]xcitation of one's own or another's genital organs,

usually to orgasm, by mutual contact or means other than sexual

intercourse."[10];  "the stimulation or manipulation of one's own genitals,

esp. to orgasm [; and,] the stimulation, by manual or other

means exclusive of coitus, of another's genitals."  Random House

Kememan Webster's College Dictionary (2010).  "[T]he stimulation or

manipulation of one's own genitals, especially to orgasm; sexual self-

gratification; or (b) the stimulation, by manual or other means exclusive

---

[9]  *See*, http://www.merriam-webster.com/dictionary/masturbation.

[10]  The American Heritage Dictionary of the English Language, 4th Ed
(2000).

of coitus, of another's genitals, especially to orgasm.[11]  The New
International Dictionary defines the word as " erotic stimulation
involving the genital organs commonly resulting in orgasm and
achieved by manual or other bodily contact exclusive of sexual
intercourse ..." Webster's Third New International Dictionary of the
English Language Unabridged 1391 (1986).

This collection shows there are two, common definitions
associated with the word.  The first, and dare I say, the most common
understanding of the word has no application here.  There is simply no
evidence of Warner stimulating his *own* genitals.  As for the alternative,
stimulation of another's genitals, the Faith photographs show a touch.
They do not show stimulation and certainly do not show it to the extent
of that other person reaching an orgasmic level.  Simply put, the touch
displayed in the Faith photographs does not equate with
"masturbation" under 18 U.S.C. Section 2256(2)(A)(iii).  As such, the
jury was improperly instructed which entitles Warner to a new trial.

---

[11] *See*, http://dictionary.reference.com/browse/masturbation.

**An Incidental Touch Is Not 'Sexual Contact"
Under 18 U.S.C. Section 2246(3)**

Warner's final argument concerns a finite aspect of his

sentence.  The district court ruled a 2 level increase in his guideline

range for "sexual contact" was appropriate as to Count 1. APX 668-669.

This was a fact based error which led directly to an erroneous

application of a 2-level increase in his guidelines.

Standard of Review

A district court's factual findings relevant to the Sentencing
Guidelines are reviewed for clear error and its interpretation
of a Guideline provision is subject to *de novo* review.  United
States v. West, 643 F.3d 102,105 (3d Cir. 2011); United
States v. Aquino, 555 F.3d 124,127 (3d Cir. 2009); United
States v. Grier, 475 F.3d 556, 570 (3d Cir.2007)(*en banc*).

Warner was convicted of all 7 counts he faced: 6 counts of

production and 1 count of possession. APX  2-3; 571-572; PSR,

paragraph 22.  At counts 1, 2, 3, 4 and 5 the district court ruled a 2 level

offense level increase was appropriate under Section2G2.1(b)(2)(A).

This section says:

> (2)    … If the offense involved –
>
> > (A) the commission of a sexual act or sexual contact,
> > increase by 2 levels

U.S.S.G. Section 2G2.1(b)(2)(A).  As is often the case, the *Application Notes* define the pertinent phrases.  "Sexual contact" has the same meaning as set forth in 18 U.S.C. Section 2246(3).[12] It is defined as:

> "[t]he intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

18 U.S.C. Section 2246(3).

Warner objected to the two-level increase for count 1.  He did so in writing and at sentencing. APX 660-661; 673.  His position was simple – exhibits 1.38A and 1.39A – do not satisfy the definition of "sexual contact".  Warner says that both photographs show the subject

---

[12] There has never been an assertion by the government or a justification by the district court that the other predicate "sexual act" was satisfied.  Government's Position with Respect to Sentencing Factors (May 7, 2014)("…the conduct charged at Count One … involved 'sexual contact' as described in 18 U.S.C. Section 2246(3)".). APX 663. Addendum to PSR (May 9, 2014)("The government has no objections to the presentence investigation report."). APX 668.  "The Court finds that these images meet [the] definition [of sexual contact]." APX 668.

pulling her underwear away from its normal position and in doing so it exposes her pubic area. APX 660-661. The government did not disagree with the characterization. It told the district court the photos show the subject 'pulling away her underpants to expose her vagina". APX 663. But, it also added, "in so doing [she] is shown touching her groin area".[13] APX 663. The district court sided with the government. "The Court finds that these two images depict the child touching her groin area." APX 668.

    Case law interpreting 2G2.1(b)(2)(A) is not abundant[14] and is non-existent on the precise issue present in this case. This Circuit's only opinion discussing the phrase "sexual contact" is United States v. Pawlowksi, 682 F.3d 205 (3d Cir. 2012). There, the defendant argued that touching one's self and transmitting that to another via a webcam is not 'sexual contact'. Id., at 210. The Court disagreed and ruled that

---

[13] The government refers to its trial exhibits as 138A and 139A. This is an obvious typographical error as the docketed exhibit list references a 1.38A and a 1.39A. APX 584.

[14] A search query of "2G2.1(b)(2)(A)" in CASEMAKER from the Pennsylvania Bar Association reveals 52 references: 12 at the district court level and 40 in the courts of appeals. There are just 2 Third Circuit references: United States v. Coates, 11-2599 (3d Cir. Feb. 23, 2013)(a double counting issue between 2G2.1(B)(2)(A) and 2G2.1(b)(3)), and United States v. Pawlowksi, 682 F.3d 205 (3d Cir. 2012), *infra*.

"masturbation" is "a form of 'sexual contact' covered by the language of the" statute. Id. at 213. This holding is consistent with that from other circuits. *See*, United States v. Shafer, 573 F.3d 267 (6th Cir. 2009), United States v. Aldrich, 566 F.3d 976 (11th Cir. 2009) and United States v. Shea, 493 Fed. Appx. 792 (7th Cir. 2012). The common denominator in each of these cases is the active manipulation of one's sexual organs. Here, there is no similar activity. At best, we have incidental touching of one's groin while pulling aside of underwear. That is not "sexual contact" under 18 U.S.C. Section 2246(3) and, consequently, Guideline Section 2G2.1(b)(2)(A) should not have applied.

The district court's finding that these two photographs showed 'sexual contact' was erroneous. This faulty finding led directly to the procedural error of Guideline Section 2G2.1(b)(2)(A) being applied to Warner's sentence. As such, his sentence is unreasonable and deserving of correction.

## CONCLUSION

Warner's convictions for production must be reversed and an acquittal entered.  Because of jury instruction error, his possession conviction should be reversed, his sentence vacated and the case remanded for a new trial.

Respectfully submitted,

**/s/ David B. Chontos**
David B. Chontos
Counsel for Appellant

## CERTIFICATE OF MEMBERSHIP IN BAR

I, David B. Chontos, hereby certify that, pursuant to 3d Cir. LAR 28.3(d), I am a member of the Bar of this Court having been admitted on May 31, 1991.

**/s/ David B. Chontos**
David B. Chontos
Counsel for Appellant

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE 32(A)(7)(C)

I, David B. Chontos, hereby certify that the within *Brief for Appellant* filed on behalf of Earl Warner at #14-3012 contains 7,046 words, excluding the parts of the brief exempt by Fed.R.App.P. 32(a)(7)(B)(iii),which therefore makes this Brief in compliance with Fed.R.App.P. 32(a)(7)(B)(I).

This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because the Brief has been prepared in a proportionally spaced typeface using Microsoft WORD, XP Professional in 14 font size in Century Schoolbook type style.

**/s/ David B. Chontos**
David B. Chontos
Counsel for Appellant

## CERTIFICATE OF IDENTICAL TEXT

I, David B. Chontos, hereby certify the text of the electronic Brief of Appellant and the hard copies of the same document filed on behalf of Earl Warner at 14-3012 are identical.

**/s/ David B. Chontos**
David B. Chontos
Counsel for Appellant

## CERTIFICATE OF VIRUS CHECK

I, David B. Chontos, hereby certify that a virus check was performed on the Brief for Appellant filed on behalf of Earl Warner at 14-3012 using Microsoft Security Essentials software.

**/s/ David B. Chontos**
David B. Chontos
Counsel for Appellant

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

**14 - 3012**

---

UNITED STATES OF AMERICA,
Appellee,

v.

EARL WARNER,
Appellant

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the *Brief for Appellant* and *Appendix, Volumes I, II, III, IV, V, VI, VII, VIII, IX* and *X* were served upon the following:

Rebecca Ross Haywood
Assistant U.S. Attorney
4000 U.S. Courthouse
700 Grant Street
Pittsburgh, PA  15219
Rebecca.Haywood@usdoj.gov

**/s/ David B. Chontos**
David B. Chontos
Counsel for Appellant

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

**14 - 3012**

---

UNITED STATES OF AMERICA,
Appellee,

v.

EARL WARNER,
Appellant

---

Appeal from Judgment of Conviction and Sentence
Entered by District Court Judge Arthur Schwab
of the Western District of Pennsylvania
at Criminal Action 12-107

---

**APPENDIX – Vol. I**

**APX 1 to APX 13**

---

USA v. Earl Warner
14-3012

# APPENDIX – Vol. I

## Table of Contents

1.    Notice of Appeal                          APX 1

2.    Judgment in Criminal Case                 APX 2-9

3.    Opinion: Jury Instruction – Necessity     APX 10-13

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        *        12-CR-107

vs.                             *

EARL WARNER                     *


### NOTICE OF APPEAL

Notice is hereby given that Earl Warner, defendant in the
above named case, hereby appeals to the United States Court of
Appeals for the Third Circuit from the final judgment entered in
this criminal case on June 3, 2014.


/s/ David B. Chontos                Carolyn Bloch
David B. Chontos                    Counsel for Appellee
Counsel for Appellant               U.S. Attorney's Office
Pa. I.D. # 53442                    Suite 4000
CHONTOS & CHONTOS, P.C.             700 Grant Street
561 Beulah Road                     Pittsburgh, PA 15219
Turtle Creek, PA  15145-1317        (412) 644 3500 (v)
412 825 5450 (v)
david@chontoslaw.com


APX 1

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Western  District of Pennsylvania

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| EARL D. WARNER | ) |
|  | ) |
|  | ) |

**JUDGMENT IN A CRIMINAL CASE**

Case Number:    12-107

USM Number:    33556068

David B. Chontos
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☒ was found guilty on count(s)    1s through 7s
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. 2251(a) and (e) | Production of material depicting the sexual exploitation of a minor | 6/4/2011 | 1s |
| 18 U.S.C. 2251(a) and (e) | Production of material depicting the sexual exploitation of a minor | 6/8/2011 | 2s |

The defendant is sentenced as provided in pages 2 through ____8____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s)   1-4        ☐ is   ☒ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

5/30/2014
Date of Imposition of Judgment

Signature of Judge

Arthur J. Schwab, United States District Judge
Name and Title of Judge

5/30/2014
Date

APX 2

AO 245B     (Rev. 09/11) Judgment in a Criminal Case
Sheet 1A

| | Judgment—Page | 2 | of | 8 |

DEFENDANT:          Warner
CASE NUMBER:     Cr 12-107

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
| --- | --- | --- | --- |
| 18 USC 2251(a) and (e) | Production of material depicting the sexual exploitation of a minor | 6/12/2011 | 3s |
| 18 USC 2251(a) and (e) | Production of material depicting the sexual exploitation of a minor | 6/13/2011 | 4s |
| 18 USC 2251(a) and (e) | Production of material depicting the sexual exploitation of a minor | 7/13/2011 | 5s |
| 18 USC 2251(a) and (e) | Production of material depicting the sexual exploitation of a minor | 7/23/2011 | 6s |
| 18 USC 2252(a)(4)(B) | Possession of material depicting the sexual exploitation of a minor | 4/9/2012 | 7s |

APX 3

AO 245B    (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

---

DEFENDANT:        Warner
CASE NUMBER:      Cr 12-107

Judgment — Page ___3___ of ___8___

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Counts 1s-6s, Defendant is sentenced  360 months at each count to run concurrently; and, at Count 7s, 120 months to run consecutively, for a total of 480 months.

☒ The court makes the following recommendations to the Bureau of Prisons:
The defendant serve his sentence at FCI Elkton subject to his classification and history.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.    on _____.

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____.

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

APX 4

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __8__

DEFENDANT:    Warner
CASE NUMBER:    Cr 12-107

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Life time term of supervised release as to each count, to run concurrently.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☒  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☒  The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☒  The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐  The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B      (Rev. 09/11) Judgment in a Criminal Case
             Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___8___

DEFENDANT:        Warner
CASE NUMBER:      Cr 12-107

# ADDITIONAL SUPERVISED RELEASE TERMS

The defendant shall participate in a mental health and/or sex offender treatment program approved by the probation officer, until such time as the defendant is released from the program by the court. The defendant shall abide by all program rules, requirements, and conditions of the sex offender treatment program, including submission to polygraph testing, to determine if he is in compliance with the conditions of release. Further, the defendant shall be required to contribute to the costs of services for any such treatment in an amount determined by the probation officer, but not to exceed the actual cost. The probation office is authorized to release the defendant's presentence report to the treatment provider if necessary.

With the exception of brief, unanticipated, and incidental contacts, the defendant shall not associate with children under the age of 18, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the probation officer.

As required by 18 U.S.C. §§ 3563 (a) (8) and 3583 (d), and the Sex Offender Registration and Notification Act (SORNA, 42 U.S.C. § 16901 et seq.), the defendant shall report the address where he will reside and any subsequent change of residence to the probation officer responsible for defendant's supervision, and further shall register as a convicted sex offender in any state where he resides, is employed, carries on a vocation, or is a student.

Defendant shall not possess or access with intent to view any materials, including pictures, photographs, books, writings, drawings, videos, or video games depicting and/or describing child pornography as defined at title eighteen united states code section 2256 (8), or obscene visual representations of the sexual abuse of children as defined at title eighteen united states code section 1466 (a).

The defendant is permitted to possess and/or use a computer and is allowed access to the Internet. However, the defendant is not permitted to use a computer, or other electronic communication or data storage devices, including a cell phone, to access child pornography or to communicate with any individual or group for the purpose of promoting sexual relations with children. The defendant shall consent to the installation of any hardware/software to monitor any computer, or other electronic communication or data storage devices used by the defendant to confirm the defendant's compliance with this condition. The defendant shall pay the monitoring costs as directed by the probation officer. Furthermore, the defendant shall consent to periodic unannounced examinations by the probation officer of any computers, cell phones, or other electronic communication or data storage devices that the defendant has access to, to confirm the defendant's compliance with this condition. Additionally, the defendant shall consent to the seizure and removal of hardware and data storage media for further analysis by or the probation officer, based upon reasonable suspicion of a violation of the conditions imposed in this case, or based upon reasonable suspicion of unlawful conduct by the defendant. The defendant's failure to submit to the monitoring and/or search of computers and other electronic communication or data storage devices used by the defendant may be grounds for revocation.

APX 6

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
          Sheet 3B — Supervised Release

| | Judgment—Page 5 of 8 |
|---|---|

DEFENDANT:       Warner
CASE NUMBER:     Cr. 12-107

## ADDITIONAL STANDARD CONDITIONS OF SUPERVISION

If the defendant's employment requires the use of a computer, the defendant may use a computer in connection with the employment approved by the probation officer, provided the defendant notifies his employer of the nature of his conviction. The probation officer shall confirm the defendant's compliance with this notification requirement.

The defendant shall provide the U.S. Probation Office with accurate information about his entire computer system (hardware/software) and other electronic communication or data storage devices or media to include all passwords used and the name of the Internet Service Provider(s). The defendant also shall abide by the provisions of the Computer Restrictions and Monitoring Program approved by the Court.

The defendant shall submit his person, property, house, residence, vehicle, papers, business or place of employment, to a search, conducted by a United States probation officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of supervision. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to searches pursuant to this condition.

The defendant shall participate in a program of testing and, if necessary, treatment for substance abuse, said program approved by the probation officer, until such time as the defendant is released from the program by the Court. Further, the defendant shall be required to contribute to the costs of services for any such treatment in an amount determined by the probation officer but not to exceed the actual cost. The defendant shall submit to one drug urinalysis within 15 days after being placed on supervision and at least two periodic tests thereafter.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
   Sheet 5 — Criminal Monetary Penalties

Judgment — Page    7    of    8

DEFENDANT:   Warner
CASE NUMBER:  Cr 12-107

## CRIMINAL MONETARY PENALTIES

 The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 700.00 | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

 If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |
| **TOTALS** | $ | $ |  |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the ☐ fine ☐ restitution.

  ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

APX 8

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

|  | Judgment — Page | 8 | of | 8 |

DEFENDANT:    Warner
CASE NUMBER:    Cr 12-107

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A    ☒    Lump sum payment of $ _700.00_____    due immediately, balance due

        ☐  not later than _____ , or
        ☐  in accordance    ☐ C,    ☐ D,    ☐ E, or    ☐ F below; or

B    ☐    Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

C    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
        term of supervision; or

E    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
        imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    ☐    Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

        Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
        and corresponding payee, if appropriate.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

APX 9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,

      v.

EARL D. WARNER,

        Defendant.

Criminal No. 12-0107
ELECTRONICALLY FILED

## MEMORANDUM ORDER ON DEFENDANT'S
## PROPOSED JURY INSTRUCTION – NECESSITY

Before the Court is Defendant's submission entitled "Proposed Jury Instruction – Necessity" (doc. no. 134) which Defendant filed late in the day on January 22, 2014, during the course of the trial in this case. The Government has not had an opportunity to respond in writing to the submission. Due to the timing of the filing of doc. no. 134, and the current status of the trial of this matter, the Court is constrained to rule upon this jury instruction without the Government's written response.

As of this writing, the Government has closed its case-in-chief. Defendant has presented three witnesses (two character witnesses and one fact witness) and has taken the stand in his own defense as to the six counts of production of child pornography, and one count of possession of child pornography charged against him. Defendant has rested, and the Court has declared the record closed. During a sidebar conference after the close of the record, counsel for the Government and Defendant argued their respective positions related to doc. no. 134. After hearing oral argument, the Court indicated that it would not instruct the jury on the affirmative defense of necessity and further indicated it would issue a Memorandum Order in this regard.

1

As a preliminary matter, the Court notes it is "bound to give the substance of a requested instruction relating to any defense theory for which there was any foundation in the evidence." *United States v. Blair*, 456 F.2d 514, 520 (3d Cir.1972). During the sidebar conference, the Court stated that it did not believe evidence had been offered upon which a foundation for a necessity jury instruction could be given. As noted by the United States Court of Appeals for the Third Circuit in *United States v. Hoffecker*:

> . . . a court "also ha[s] to avoid diverting the jury by idle speculation and frivolous considerations. A confused jury can give as improper a verdict as one which has failed to receive some significant instruction. Therefore, the charge should direct and focus the jury's attention on the evidence given at trial, not on far fetched and irrelated ideas that do not sustain a defense to the charges involved."

*Hoffecker,* 530 F.3d 137, 156, (3d Cir. 2008), quoting *Blair,* 456 F.2d at 520.

The Court finds that there is insufficient evidence for any reasonable jury to find "justification" or "necessity" as an affirmative defense to the charges against him; as such, the Court will not charge the jury on "justification" or "necessity" for the following reasons.

The Court notes that the United States Court of Appeals for the Third Circuit treats the affirmative defenses of "duress" and "justification" (which is used interchangeably with "necessity" in the Third Circuit's model jury instructions and case law) as having the same four elements; however, under the Third Circuit model jury instructions provides separate instructions are provided for the defense of "duress" and the defense of "justification."

Those four elements require a defendant to establish that: (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

2

*United States v. White*, 75 Fed. Appx. 894, 897, n1 (3d Cir. 2003), quoting *U.S. v. Paolello*, 951 F.2d 537 (3d Cir. 1991).

In *United States v. Naovasaisri*, 150 Fed.Appx. 170, 173-74 (3d Cir. 2005), the Court of Appeals for the Third Circuit agreed with the district court's decision not to instruct the jury on the defense of "duress" where it was clear that the defendant had failed to make out a *prima facie* case for duress.

Using *Naovasaisri* as a guidepost in this matter, Defendant, Earl Warner, would be entitled to a "justification" or a "necessity" jury instruction presuming he had made out a *prima facie* case for justification" or "necessity." In order to do so, Defendant would have had to adduce evidence relative to each of the four elements necessary to establish a *prima facie* case for justification and/or necessity, and then present that evidence to the jury during the course of this trial. The Court indicated during the sidebar conference and reiterates here that Defendant fell woefully short of doing adducing and presenting such evidence. Accordingly, the Court declines to instruct the jury on a "justification" or a "necessity" defense, given this state of the evidence.

First, the Court finds that no evidence was proffered which would tend to prove that a set of exigent circumstances which lead to the purported offenses existed in this case. To the contrary, all of the evidence presented indicated that the purported offenses of production and possession of child pornography occurred over (at least) a one- to two-month period of time. Thus, there was no evidence of exigency presented during the trial.

In addition, there was no evidence presented which in any way supports any of the four elements Defendant must prove to meet his burden of proof as to a "necessity" defense. At no time during the trial was any evidence proffered concerning the first element – *i.e.,* that

3

Defendant was under unlawful and present threat of death or serious bodily injury.   Similarly, at

no time during the trial was any evidence proffered concerning the second element – *i.e.,* that

Defendant did not recklessly place himself in a situation where he would be forced to engage in

criminal conduct.   Additionally, at no time during the trial was any evidence proffered

concerning the third element – *i.e.,* that Defendant had no reasonable legal alternative (to both

the criminal act and the avoidance of the threatened harm).   Finally, at no time during the trial

was any evidence proffered concerning the fourth element – *i.e.,* that there was a direct causal

relationship between the criminal action of production and/or possession of child pornography

and the avoidance of the threatened harm.

Accordingly, the Court will decline to instruct the jury on the affirmative defense of

"necessity" or "justification" in the Final Jury Instructions.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:    All Registered ECF Counsel and Parties

4

APX 13